**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                        )
RICHARD GAMBINO, as he is ADMINISTRATOR,)
LOCAL 103, I.B.E.W. HEALTH BENEFIT PLAN;)
ELECTRICAL WORKERS' PENSION FUND, LOCAL )
103, I.B.E.W.; ELECTRICAL WORKERS'      )
DEFERRED INCOME FUND, LOCAL 103,        )
I.B.E.W.; JOINT APPRENTICESHIP AND      )
TRAINING FUND; and LAWRENCE J. BRADLEY, )
as he is EXECUTIVE SECRETARY-TREASURER, )
NATIONAL ELECTRICAL BENEFIT FUND,       )
                                        )
        Plaintiffs,                     )
                                        )
        v.                              )
                                        )
ADA ALFONSO d/b/a ALFONSO ELECTRICAL    )
SERVICES AND ALFONSO ELECTRICAL CO.,    )
and OLD GOAT ENTERPRISES, INC.,         )
                                        )
        Defendants, et al.              )
_____)
_____     CIVIL NO. 10-10860-PBS
                                        )
INTERNATIONAL BROTHERHOOD OF ELECTRICAL )
WORKERS LOCAL 103; RICHARD GAMBINO, as  )
he is ADMINISTRATOR, LOCAL 103, I.B.E.W.)
HEALTH BENEFIT PLAN; ELECTRICAL WORKERS')
PENSION FUND, LOCAL 103, I.B.E.W.;      )
ELECTRICAL WORKERS' DEFERRED INCOME     )
FUND, LOCAL 103, I.B.E.W.; and JOINT    )
APPRENTICESHIP AND TRAINING FUND,       )
                                        )
        Plaintiffs,                     )
                                        )
        v.                              )
                                        )
ADA ALFONSO d/b/a ALFONSO ELECTRICAL    )
SERVICES AND ALFONSO ELECTRICAL CO.,    )
and OLD GOAT ENTERPRISES, INC.,         )
                                        )
        Defendants,                     )
                                        )
E.W. AUDET & SONS, INC.                 )
                                        )
        Reach and Apply Defendant,      )
```

1

```
                                          )
MECHANICS COOPERATIVE BANK,               )
                                          )
      Trustee.                            )
                                          )
```

## MEMORANDUM AND ORDER

November 20, 2012

Saris, U.S.D.J.

## I. INTRODUCTION

        In this consolidated action, Plaintiff Richard Gambino, as

he is administrator of Local 103, I.B.E.W.'s employment funds,[1]

seeks enforcement of an arbitration decision under § 301 of the

Labor Management Relations Act ("LMRA"). 29 U.S.C. § 185. At

issue is the decision of a Joint Labor-Management Committee

awarding Plaintiffs $45,686.67 in past-due employer contributions

to several employee benefit plans formed under the Employee

Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1002(1)-

(2). Defendant-employer Ada Alfonso[2] contests the validity of the

arbitration on the grounds that the arbitration was not

authorized or binding and that the arbitrators were biased. After

---

[1] Plaintiffs are LOCAL 103, I.B.E.W. HEALTH BENEFIT PLAN; ELECTRICAL
WORKERS' PENSION FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' DEFERRED
INCOME FUND, LOCAL 103, I.B.E.W.; JOINT APPRENTICESHIP AND TRAINING FUND; and
LAWRENCE J. BRADLEY, as he is EXECUTIVE SECRETARY-TREASURER, NATIONAL
ELECTRICAL BENEFIT FUND.

[2] Defendants are ADA ALFONSO d/b/a ALFONSO ELECTRICAL SERVICES AND
ALFONSO ELECTRICAL CO. and OLD GOAT ENTERPRISES, INC. ("Old Goat"). While
there are two defendants, the parties now agree the resolution of the dispute
will apply to both Defendants the same.

hearing, Plaintiffs' Motion for Summary Judgment (Docket No. 102) is **DENIED** and Defendants' Motion to Vacate the Grievance Decision (Docket Nos. 87 & 89) is **ALLOWED**.

## II. PROCEDURAL HISTORY

On May 21, 2010, Plaintiffs brought the first action against Defendants, alleging that they were delinquent in making contributions to employee pension funds, pursuant to a Collective Bargaining Agreement ("CBA") between the parties. While the action was pending, Local 103 sought to arbitrate this same issue before a joint labor-management arbitration panel, the Joint Conference Committee ("JCC"). The JCC ruled on April 30, 2012 and ordered Defendants to pay $89,273.67, a sum which was reduced to $45,686.67 when Defendants paid a certain amount within 30 days of the judgment.

On May 31, 2012, Defendants filed Motions to Vacate the Grievance Decision, which Plaintiffs opposed. Local 103 brought a second action on June 22, 2012 seeking to confirm the JCC arbitration award under the LMRA. On August 10, 2012, these two separate actions were consolidated.

## III. UNDISPUTED FACTS

International Brotherhood of Electrical Workers ("IBEW") Local 103 ("Local 103") is a labor union in the electrical and construction industries in eastern Massachusetts. The Plaintiffs are multi-employer benefit funds ("Funds"), which provide

3

medical, retirement, and other benefits to participants based
upon contributions paid by employers signatory to the CBA between
the employers and Local 103. Defendants Alfonso Electrical
Services and Alfonso Electrical Co. are such signatory
contractors.  Ada Alfonso, the President of Alfonso Electrical
Services and Alfonso Electrical Co., signed a letter of assent
with Local 103. Alfonso is also the majority owner, president,
treasurer, and resident agent for service of process of Defendant
Old Goat Enterprises, Inc. ("Old Goat"), a related entity. Old
Goat agrees that it is bound by the CBA, although a non-
signatory.

From January 2010 to May 2010, Defendants failed to make
contributions to the Funds. Plaintiffs also contend they owe the
Funds amounts for past-due interest on late-paid contributions,
an auditor's fee, and attorney's fees and costs. The parties
dispute the amount.

The CBA contains the following relevant provisions:

§ 1.5 There shall be a Labor-Management Committee of
three (3) representing the Union and three (3)
representing the Employers. . . . The Local Union shall
select the Union representatives and the Chapter shall
select the management representatives.

§ 1.6 All grievances or questions in dispute shall be
adjusted by the duly authorized representatives of each
of the parties to this Agreement.  In the event that
these two are unable to adjust any matter within forty-
eight (48) hours, they shall refer the same to the Labor-
Management Committee.

§ 1.7 All matters coming before the Labor-Management

4

Committee shall be decided by majority vote. Four (4)
members of the Committee, two (2) from each of the
parties hereto, shall be a quorum for the transaction of
business but each party shall have the right to cast the
full vote of its membership and it shall be counted as
though all were present and voting.

§ 1.8 Should the Labor-Management Committee fail to agree
or to adjust any matter, such shall then be referred to
the Council on Industrial Relations for the Electrical
Contracting Industry for adjudication. The Council's
decision shall be final and binding.

On April 20, 2012, the parties appeared before five members

of the JCC to arbitrate the dispute at issue in the instant case.

These five members included Glen Kinsbury, Michael Monahan and

John Dumas, all Trustees of Local 103 Funds. Another member, Paul

Garacino is a principal of J&M Electric, a business in

competition with Old Goat.  Defendant, Alfonso Electrical, filed

a motion to disqualify these four members of the panel.  This

motion was denied. The JCC issued its opinion on April 30, 2012.

## IV. DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate when "'the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law.'"  Barbour v.

Dynamics Research Corp., 63 F.3d 32, 36-37 (1st Cir. 1995)

(quoting Fed. R. Civ. P. 56(c)).  To succeed on a motion for

summary judgment, "the moving party must show that there is an

absence of evidence to support the nonmoving party's position."
<u>Rogers v. Fair</u>, 902 F.2d 140, 143 (1st Cir. 1990).

Once the moving party has made such a showing, the burden
shifts to the non-moving party, who "may not rest on mere
allegations or denials of his pleading, but must set forth
specific facts showing there is a genuine issue for trial."
<u>Barbour</u>, 63 F.3d at 37 (internal quotations omitted).  The non-
moving party must establish that there is "sufficient evidence
favoring [its position] for a jury to return a verdict [in its
favor].  If the evidence is merely colorable or is not
significantly probative, summary judgment may be granted."
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)
(internal citations omitted).  The Court must "view the facts in
the light most favorable to the non-moving party, drawing all
reasonable inferences in that party's favor."  <u>Barbour</u>, 63 F.3d
at 36 (citation omitted).

## B. The Grievance Proceeding

Defendants argue that the proceeding conducted by the JCC
pursuant to the CBA was unfair in two ways: 1) it lacked
procedural due process protections and 2) the arbitrators were
not impartial decision-makers.

An arbitration panel must afford each party an adequate
opportunity to present both evidence and argument. <u>See Hoteles
Condado Beach, La Concha & Convention Center v. Union de</u>

6

<u>Tronquistas Local 901</u>, 763 F.2d 34, 39 (1st Cir. 1985). Although "[a]n arbitrator enjoys wide latitude in conducting an arbitration hearing," <u>id.</u> at 38, the "proceedings must meet the minimal requirements of fairness - adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." <u>Ramirez-de-Arellano v. Am. Airlines</u>, 133 F.3d 89, 91 (1st Cir. 1997).

Defendants concede that they received notice and a hearing. However, they criticize the hearing's brevity because the proceeding lasted less than an hour, and the decision was based primarily on documents submitted by the parties rather than the testimony of witnesses. At oral argument, defense counsel conceded there was a brief opportunity to examine witnesses but he complained it was truncated. In light of Defendants' vague and conclusory allegations, Defendants have failed to present any evidence to create a disputed issue of fact that there was insufficient opportunity to present evidence and argument.

The stronger and more difficult argument concerns a claim of arbitrator bias. What really gets the Defendants' goat is that three members of the JCC were also Trustees of the Local 103 Pension and Benefit Funds. Since these funds directly benefit from any financial award adjudicated by the JCC, Defendants assert the Trustees were biased and could not serve as neutral decision-makers in the proceeding. They also state that another

member of the JCC was a principal for a business in direct
competition with Old Goat. This, too, Defendants argue,
disqualifies him as an impartial arbitrator.

Defendants frame their challenge to the proceedings by
relying on the requirements of the Due Process Clause. Due
process requires a "neutral and detached judge in the first
instance." Ward v. Village of Monroeville, 409 U.S. 57, 61-62
(1972). The requirement of due process applies "when a
legislature delegates adjudicative functions to a private party."
Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508
U.S. 602, 617 (1993). However, due process protections "do not
extend to private conduct abridging individual rights." Nat'l
Collegiate Ath. Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988)
(internal citations omitted). Indeed, even in situations where
due process does apply, parties may waive many constitutional
rights, including due process, through private contract, so long
as the waiver is voluntary, knowing and intelligent. See, e.g.,
D. H. Overmyer Co. v. Frick Co., 405 U.S. 174, 185 (1972) ([D]ue
process rights to notice and hearing prior to a civil judgment
are subject to waiver."); Nat'l Equip. Rental, Ltd. v. Szukhent,
375 U.S. 311, 315-16 (1964) ("[I]t is settled . . . that parties
to a contract may agree in advance to submit to the jurisdiction
of a given court, to permit notice to be served by the opposing

8

party, or even to waive notice altogether.").[3] Thus, while
"[a]rbitration proceedings must meet the minimal requirements of
fairness," <u>Ramirez-De-Arellano</u>, 133 F.3d at 91, when parties
contract for arbitration, "[g]enerally, partisan arbitrators are
permissible, 'if that is what the parties' arbitration clause
contemplated'" <u>Nationwide Mut. Ins. Co. v. First State Ins. Co.</u>,
213 F. Supp. 2d 10, 17 (D. Mass. 2002) (quoting <u>ATSA of Cal.,</u>
<u>Inc. v. Continental Ins. Co.</u>, 754 F.2d 1394, 1395 (9th Cir.
1985)). The conundrum is that while both parties agreed to a

---

[3] In other contexts courts have held that private arbitrations do not
involve state action. <u>See</u> <u>Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.</u>, 191
F.3d 198, 207 (2d Cir. 1999) (finding SEC approval of arbitration clause did
not constitute "state action" because "[m]ere approval . . . is not sufficient
to justify holding the State responsible for those initiatives."); <u>Duffield v.</u>
<u>Robertson Stephens & Co.</u>, 144 F.3d 1182, 1201 (9th Cir. 1998) ("No federal law
required [plaintiff] to waive her right to litigate employment-related
disputes by signing the [arbitration agreement], and no state action is
present in simply enforcing that agreement."); <u>Davis v. Prudential Sec., Inc.</u>,
59 F.3d 1186, 1191-92 (11th Cir. 1995) (finding that the relevant "arbitration
was a private proceeding arranged by a voluntary contractual agreement of the
parties . . . . [and t]he mere confirmation of a private arbitration award by
a district court is insufficient state action to trigger the application of
the Due Process Clause."); <u>Elmore v. Chicago & Illinois Midland Ry. Co.</u>, 782
F.2d 94, 96 (7th Cir. 1986) ("The fact that a private arbitrator denies the
procedural safeguards that are encompassed by the term "due process of law"
cannot give rise to a constitutional complaint."); <u>United States v. American</u>
<u>Soc'y of Composers, Authors and Publishers</u>, 708 F. Supp. 95, 96-97 (S.D.N.Y.
1989) (holding mere court approval of arbitration is not state action,
otherwise "all arbitrations could be subject to due process limitations
through the simple act of appealing the arbitrators' decisions to the court
system."); <u>but see</u> <u>Commonwealth Assocs. v. Letsos</u>, 40 F. Supp. 2d 170, 177
(S.D.N.Y. 1999) ("[T]he Court respectfully doubts that the rationale . . . set
forth in [<u>Davis</u>, 59 F.3d at 1191] -viz. that an arbitration award involves no
state action - is well founded. While the procedures utilized in private
arbitration do not constitute state action, the application of the coercive
power of a court to confirm and enforce an arbitration award arguably is
another matter.") The Supreme Court has yet to directly address this question.
However, since the employer waived an entirely neutral decision-maker, this
Court need not address whether the Due Process Clause would have applied to
the arbitration.  <u>Cf.</u> <u>Bowen v. Amoco Pipeline Co.</u>, 254 F.3d 925, 940 (10th
Cir. 2001) (declining to determine whether Due Process Clause applied to
private arbitration agreement, because parties had clearly agreed to limited
judicial review in contract).

proceeding before a joint-labor management committee consisting of partisan arbitrators, they also agree that the arbitrator must be impartial, and both sides apply the standards of impartiality established by the Federal Arbitration Act ("FAA") in their briefs.  What standard of impartiality should apply to arbitrators who are partisans permitted under contract?

To begin with, this action is governed by Section 301 of the LMRA, not the FAA. See Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 451-52 (1957) (holding that collective bargaining agreements are enforceable under § 301 of the LMRA). The LMRA contains its own body of federal substantive law distinct from the FAA, and the "[LMRA] takes precedence over the FAA where conflicts between the two may exist." W. Mass. Elec. Co. v. IBEW, No. 11-30106, 2012 U.S. Dist. LEXIS 139068, at *12 (D. Mass. Sept. 27, 2012) (citing Smart v. Int'l Bhd. of Elec. Workers, Local 702, 315 F.3d 721, 724 (7th Cir. 2002)). Nonetheless, the Supreme Court has held that courts may use the FAA as a source of principles and guidance in developing the federal common law governing the LMRA. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 41 n.9 (1987) (citing Textile Workers, 353 U.S. at 448); see also Providence Journal Co. v. Providence Newspaper Guild, 271 F.3d 16, 19 n. 3 (1st Cir. 2001) ("[F]ederal courts rely on FAA cases to inform their LMRA analysis."). Thus, while the FAA "is not binding in cases arising under section 301"

of the LMRA, it may still "be consulted in the formulation of federal substantive law," Derwin v. Gen. Dynamics Corp., 719 F.2d 484, 488 (1st Cir. 1983), and it has been consulted by the First Circuit and several sister circuits in the specific context of examining arbitrator neutrality under a collective bargaining agreement, see JCI Commc'ns, Inc. v. Int'l Broth. of Elec. Workers, Local 103, 324 F.3d 42, 48, 51 (1st Cir. 2003); Williams v. NFL, 582 F.3d 863, 885 (8th Cir. 2009); Consolidation Coal Co. v. Local 1643, United Mine Workers, 48 F.3d 125, 128-29 (4th Cir. 1995); Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds, 748 F.2d 79, 82-84 (2d Cir. 1984).

It is noteworthy that the Seventh Circuit specifically declined to apply the FAA's arbitrator neutrality standards to arbitration pursuant to a CBA. Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs, Local 150, 639 F.3d 286, 290, 292 (7th Cir. 2011). The court held that the FAA did not apply to an arbitration conducted by a joint labor-management panel because the parties had privately agreed on this procedure. Id. at 292. Instead, the court relied "on the balanced voting membership of the joint committee [agreed upon in the CBA] to provide fairness to the interested parties." Id. at 292. However, as noted above, the First Circuit and many other circuits have applied the FAA impartiality standards to private arbitration proceedings, and so, this Court does as well.

11

Under the FAA, an arbitral award may be vacated on grounds
of "evident partiality" of the arbitrators. 9 U.S.C. § 10(a)(2).
"Evident partiality is more than just the appearance of possible
bias. Rather, evident partiality means a situation in which a
reasonable person would have to conclude that an arbitrator was
partial to one party to an arbitration." JCI Commc'ns, 324 F.3d
at 51 (internal citations omitted). "The alleged partiality must
be 'direct, definite, and capable of demonstration rather than
remote, uncertain or speculative.'" Kiewit/Atkinson/Kenny v.
Int'l Bhd. of Elec. Workers, 76 F. Supp. 2d 77, 79-80 (D. Mass.
1999) (quoting Peoples Sec. Life Ins. Co. v. Monumental Life Ins.
Co., 991 F.2d 141, 146 (4th Cir. 1993)); see also United Steel
Workers of Am., Local 12003 v. Keyspan Energy Delivery, No. 08-
11928-GAO, 2009 U.S. Dist. LEXIS 68427 (D. Mass. Aug. 3, 2009);
Nationwide Mut. Ins. Co., 213 F. Supp. 2d at 17. However, proof
of actual bias is not required. Morelite Constr. Corp., 748 F.2d
at 84.

Parties who contract for a joint labor-management panel
agree to a partisan structure for the benefits of greater
industrial expertise during arbitration. JCI Commc'ns, Inc, 324
F.3d at 51; see also Nationwide Mut. Ins. Co., 213 F. Supp. 2d at
17 ("[P]eople who arbitrate do so because they prefer a tribunal
knowledgeable about the subject matter of their dispute to a
generalist court with its austere impartiality but limited

knowledge of subject matter. As a result, an arbitration often represents a tradeoff between impartiality and expertise.") (internal citations omitted). Nonetheless, even in the context of joint labor-management panels, courts apply the FAA's "evident partiality" standard when specific instances of bias are alleged beyond the agreed upon structure of a joint panel.

Defendants contend that Paul Garacino, who worked for a direct competitor of Old Goat, was a biased arbitrator. "The mere fact that the panel included business rivals of one party does not rise to the level of evident partiality." JCI Commc'ns, 324 F.3d at 52. Alfonso agreed to the inclusion of rivals when she entered into a CBA which utilized a joint-labor management panel. This form of bias inheres in the agreed upon arbitration structure. Without direct, definite and demonstrative evidence of bias, there is no evident partiality.

Defendants argue with greater force that the three panel members who concurrently served as Trustees to the Local 103's Benefit and Pension Funds are biased because they have fiduciary duties to the Funds. These conflicting responsibilities, they contend, constitute evident partiality.

The Court has found no published case that specifically addresses whether the trustee of a pension plan can serve as an impartial decision-maker on a joint labor-management committee

regarding a dispute that directly affects the pension funds. In a related context, though, the Supreme Court, analyzed arbitrator bias in "withdrawal liability" assessments under the Multiemployer Pension Plan Amendments Act, and assumed that when a pension fund trustee serves as an arbitrator adjudicating legal issues related to that same fund, there is a "possibility of bias, if only that stemming from the trustees' statutory role and fiduciary obligation." Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 618 (1993). In the same context, the Third Circuit held, "There is powerful evidence that the trustees have a significant conflict of interest: as fiduciaries of the plan, trustees have a natural inclination and may even consider it a duty to maximize the fund by extracting as much money as possible from withdrawing employers." United Retail & Wholesale Emps. Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc., 787 F.2d 128, 138 (3d Cir. 1986) (overruled on other grounds).

In this case, the issues in dispute, namely the amount of money Defendants owed in deficient benefit contributions, directly concerned the Funds to which the Trustees owed a fiduciary duty. See Yorkaire, Inc. v. Sheet Metal Workers Int'l Ass'n., Local Union No. 19, 758 F. Supp. 248, 257 (E.D. Pa. 1990) (finding no evident partiality by trustee-arbitrators because "the issues in dispute before the arbitration panel did not

14

concern the Funds to which the Trustees owed a fiduciary duty.")
As Trustees of the Local 103 Funds, the arbitrators had a
fiduciary duty under ERISA to ensure the stability and success of
these Funds. 29 U.S.C. § 1104. In adjudicating this dispute, the
trustee-arbitrators may have been tempted to maximize the
monetary award contributed to the Funds, see Concrete Pipe, 508
U.S. at 617, or they could have refrained from awarding the
largest monetary award in order to encourage future employer
participation in the funds, see United Retail, 787 F.2d at 139.
Either way, this constitutes bias.

    While the issue is close—there is no evidence of actual
bias, and there is no published case directly on point—a
reasonable person would have to conclude that an arbitrator with
a fiduciary duty to one party would be partial to that party in
the arbitration. As fiduciaries, the Trustees' primary loyalty is
to the Funds, and there is nothing in the record or the caselaw
to indicate they doff this hat temporarily for the purposes of
arbitration. The trustee-arbitrators were also making
adjudicative determinations affecting Defendants' financial
liability—they were not acting merely in an enforcement capacity.
See Concrete Pipe, 508 U.S. at 618-19 (finding no evident
partiality of pension fund trustees determining employer
withdrawal liability to the funds because they were acting in an
administrative rather than adjudicative capacity).  There is no

evidence that Defendants knowingly, intentionally or voluntarily agreed to have the trustees themselves as the arbitrators.[4]

Finally, Defendants argue that, upon vacating the grievance award, the Court should not resubmit these claims to the JCC panel, which will remain biased for two reasons. First, based on the terms of the contract, John Dumas, the President of the Local 103 and a Trustee of the Local 103 Funds, will appoint the new members of the JCC panel who will be similarly favorable to the Funds. However, these are the express and transparent terms to which Defendants agreed. Unless Dumas appoints panel members who are also Trustees, without other specific or direct evidence of bias, this is not evident partiality. Second, Defendants argue that the structure of the JCC, which includes three employer representatives, will necessarily include business rivals. However, as discussed above, this is the partisan structure to

---

[4] Plaintiffs rely on an unpublished case from the Second Circuit that held that an arbitration conducted by a joint labor management panel pursuant to a CBA should not be vacated, though members of the panel were also trustees of the union's benefit funds at issue in the arbitration. Ecoline, Inc. v. Local Union No. 12 of the Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers, 271 Fed. Appx. 70 (2d Cir. 2008). The court upheld the arbitration award on two grounds. First, the court held that the parties had agreed under the CBA to this form of a panel proceeding, and evidence on the record showed that the employer knew when signing the agreement that the labor-management panel could consist of members who were also trustees of the union pension plan. Id. at 72. Second, the court held that, even if the employer could show he had not agreed to an arbitration panel that could include trustees, under the "evident partiality" standard, "mere presence of the Trustees on the [panel]," without more, was not sufficient to make a showing of bias. Id. The unpublished case is distinguishable, in part, because there is no evidence on this record that the Defendants had any knowledge that the JCC would include Trustees of the Funds to which Defendants must contribute. Additionally, the Second Circuit in Ecoline does not address the language of Concrete Pipe, which assumes the possibility of bias on the part of a trustee adjudicating issues related to the beneficiary funds.

16

which Defendants agreed under the terms of the CBA, which also
includes the benefits of industry expertise. This, by itself, is
insufficient to make out a claim of bias. This claim may be
vacated for a new proceeding before a new panel of the JCC.

## C.  Authority of JCC to Arbitrate Grievance

Plaintiffs argue that the JCC has the authority to arbitrate
this claim because Defendants' obligation to contribute to the
Funds arose under the CBA, and the CBA requires "all grievances
or questions in dispute" to be adjudicated by the JCC. Defendants
contend that this claim is not arbitrable under the CBA. The
authority of the JCC to arbitrate grievances, they argue, only
extends to disputes related to the terms of the CBA itself or
changes to the terms of the CBA. It does not extend to all
possible grievances arising under the agreement.

To determine whether the pension fund dispute was
arbitrable, "the court looks to the terms of the arbitration
agreement, for 'arbitration is a matter of contract and a party
cannot be required to submit to arbitration any dispute which he
has not agreed so to submit.'" Mobil Oil Corp. v. Oil, Chem. &
Atomic Workers Int'l Union, 600 F.2d 322, 326-27 (1st Cir. 1979)
(quoting Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 241
(1962)). The Supreme Court has held that "where the contract
contains an arbitration clause, there is a presumption of

17

arbitrability." <u>AT&T Techs., Inc. v. Commc'ns Workers of Am.</u>,
475 U.S. 643, 650 (1986). <u>See also</u> <u>Int'l Bhd. of Elec. Workers,</u>
<u>Local 1228 v. WNEV-TV, New England Television Corp.</u>, 778 F.2d 46,
48 (1st Cir. 1985) (adopting a "strong presumption favoring
arbitrability."). Likewise, the Court has held that

> "[a]n order to arbitrate the particular grievance should
> not be denied unless it may be said with positive
> assurance that the arbitration clause is not susceptible
> of an interpretation that covers the asserted dispute.
> Doubts should be resolved in favor of coverage. . . . In
> the absence of any express provision excluding a
> particular grievance from arbitration, we think only the
> most forceful evidence of a purpose to exclude the claim
> from arbitration can prevail."

<u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363
U.S. 574, 585 (1960).

Courts have found that the language of the CBA between Local
103 and Alfonso is extremely broad and covers all disputes
between the union and employer that arise under the agreement.
<u>See, e.g.</u> <u>N. Elec., Inc. v. Local Union 158, Int'l Bhd. of Elec.</u>
<u>Workers</u>, 387 F. Supp. 2d 916, 919 (E.D. Wis. 2005) (finding that
arbitration clause covering "all grievances or questions in
dispute" was "extremely broad," allowing for arbitration of a
contract renewal grievance); <u>Local 2, Int'l Bhd. of Elec.</u>
<u>Workers, AFL-CIO v. Smith Commc'ns, Inc.</u>, No. 90-4018-CV-C-9,
1991 U.S. Dist. LEXIS 15296, at *14 (W.D. Mo. Sept. 5, 1991)
(finding that arbitration clause for "all grievances or questions

in dispute" by its own terms covers all disputes between the
union and employer that arise under the agreement); <u>O'Neil v.
Epic Power Servs., Inc.</u>, 620 F. Supp. 32, 36 (S.D. Ga. 1985)
(finding that arbitration clause covering "all grievances or
questions in dispute" was "sweeping" and "without exception,"
covering claims generally related to the employment
relationship). As this claim involves a dispute over the amount
of the contributions due under the CBA, the CBA's arbitration
clause covers the instant dispute between the parties.

**D. Final and Binding Nature of JCC Decisions**

Finally, Defendants assert that the JCC's decisions are not
final and binding. They point out that the CBA does not state
explicitly that the proceeding before the JCC is an "arbitration"
or "final and binding." In contrast, the decisions of the Council
on Industrial Relations are described as "final and binding" in
the agreement.  Therefore, in Defendants' view, the award cannot
be considered a settled resolution.

"[B]efore a court accepts the award of a grievance committee
as the final resolution of a dispute, it must be assured that the
decision was intended to and does, by fair and adequate
procedures, settle the controversy." <u>Elec. Contractors Ass'n of
Greater Boston, Inc. v. Local Union 103, Int'l Bhd. of Elec.
Workers</u>, 458 F.2d 590, 592 (1st Cir. 1972) (internal citations

omitted). However, a controversy before a joint labor-management committee is not "unsettled" merely because the means chosen by the parties to adjudicate the dispute is not termed "arbitration," so long as the parties have chosen an "instrument for the definitive settlement of grievances." <u>Gen. Drivers, W. & H. v. Riss & Co.</u>, 372 U.S. 517, 519 (1963).

It is true that the CBA does not expressly state that the JCC's decisions are final and binding.  Still, other courts have found that contracts with identical language provided for final and binding arbitration. <u>E.g.</u>, <u>Local Union 1253, IBEW v. S/L Constr., Inc.</u>, 217 F. Supp. 2d 125, 132 (D. Me. 2002); <u>Tecam Elec. M.V. Inc. v. Local Union 701, Int'l Bhd. of Elec. Workers</u>, No. 01 C 3333, 2001 WL 1338985, at *4 (N.D. Ill. Oct. 29, 2001); <u>Int'l Bhd. of Elec. Workers, Local Union No. 124 v. Alpha Elec. Co.</u>, 759 F. Supp. 1416, 1420-22 (W.D. Mo. 1991). Indeed, if the agreement were interpreted as Defendants suggest "the only time that a final and binding decision would be made is if the [JCC] failed to agree or adjust a matter referred to the Council on Industrial Relations" and "any decisions made pursuant to Sections [1.5, 1.6, and 1.7] would be useless." <u>Tecam Elec.</u>, 2001 WL 1338985, at *4. This outcome is counter to Congress' strong policy favoring arbitration as an efficient alternative to litigation. <u>Menorah Ins. Co. v. INX Reinsurance Corp.</u>, 72 F.3d 218, 222-23 (1st Cir. 1995) ("Underlying the policy of enforcing

contracts to arbitrate is a belief that where parties can agree to a mutually optimal method and forum for dispute resolution, it serves the interests of efficiency and economy to allow them to do so."). The Court concludes that proceedings before the JCC constitute an arbitration with a final and binding resolution.

## ORDER

The Court **DENIES** Plaintiffs' Motion for Summary Judgment (Docket No. 102) and **ALLOWS** Defendants' Motion to Vacate Grievance Decision (Docket Nos. 87 & 89). Defendants are entitled to a new grievance proceeding under the CBA consistent with this ruling.

 /s/Patti B. Saris
PATTI B. SARIS
United States District Judge